**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FIRAS AL-SALIBI, | Civil Action No. 10-1996 (SDW) |
|        Petitioner, | |
| v. | |
| | **OPINION** |
| UNITED STATES OF AMERICA, | |
|        Respondent. | October 31, 2011 |

**WIGENTON**, District Judge.

Before the Court is the petition of Firas Al-Salibi ("Al-Salibi" or "Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). The United States of America (the "Government" or "Respondent") moves to dismiss the Petition. For the reasons set forth below, the court **DENIES** the Petition and **GRANTS** Respondent's Motion to Dismiss with prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 22, 2007, Petitioner, a non-resident alien from West Bank, was arrested in the United States pursuant to an immigration warrant. (Government's Appendix (hereinafter "App.") at 7-8, *United States v. Al-Salibi*, No. 07-687, 2008 WL 2699429, at *1 (June 27, 2008). Prior to Petitioner's arrest, the Federal Bureau of Investigation ("FBI") investigated and suspected Petitioner's possession and use of fraudulent identification. (App. at 8.) Following the arrest, while in prison, Petitioner called and wrote a letter to his brother, Nidal, to ask for help recovering Petitioner's belongings. (*Id.* at 8-9.) During their phone calls, which began with an automated announcement notifying them that the call might be recorded, Nidal informed

Petitioner that the calls could be monitored. (App. at 123-24, Tr. of Trial at 54-55.)  Nidal, assuming that Petitioner gave him permission to retrieve Petitioner's belongings, asked Petitioner's landlord for entry to Petitioner's room. (*See* App. at 9-10, *Al-Salibi*, 2008 WL 2699429, at *3.)  The landlord, suspicious of Nidal, contacted the FBI, as Petitioner had recently disappeared and had previously stated that he had no family in the United States. (*Id.* at 10.) Thereafter, the FBI suspected that Petitioner's belongings were removed from his residence, so in order to prevent destruction of evidence, the FBI went to Nidal's home. (*Id.* at 11.)  After obtaining consent from Nidal, the FBI searched Nidal's apartment and vehicle without an arrest or search warrant. (*See id.* at 11, 13.)  The searches revealed that Petitioner possessed DMV cards, credit cards, and birth certificates in the name of Azra Eliaho and/ or Joseito Montalvo. (*Id.* at 14, n. 11.)  During the search, the FBI also uncovered Petitioner's letter to his brother.[1] (*Id.* at 15.)

On August 17, 2007, following Petitioner's arrest, a federal grand jury charged Petitioner with a two-count Indictment, Count One, "willfully and knowingly mak[ing] a false statement in an application for a passport" pursuant to 18 U.S.C. §§ 1542 and 2, and with Count Two, "knowingly transfer[ring], possess[ing], or us[ing], without lawful authority, a means of identification of another person," in violation of 18 U.S.C. §§ 1028A(a)(1), 2. (*See* App. at 7-8, *Al-Salibi*, 2008 WL 2699429, at *1.)  Then, on July 27, 2008, Judge Greenaway rendered an

---

[1] Nidal later confirmed that this letter was correctly translated into English. (App. at 119-120, Tr. of Trial at 50-51.)

Opinion and Order denying the motion to suppress evidence, which Petitioner's counsel, James Patton, Esq., filed on October 3, 2007.[2] (*See id.* at 4-6.)

On August 8, 2008, a grand jury returned the following six-count Superseding Indictment against Petitioner:

- Count One: "knowingly and willfully mak[ing] a false statement in an application for passport" in violation of 18 U.S.C. §§ 1542, 2.  The date of this offense was April 5, 2005.

- Count Two: "knowingly transfer[ring], possess[ing], and us[ing], without lawful authority, means of identification of another person . . . during and in relation to a felony violation  . . . namely making a false statement in a U.S. Passport application as alleged in Count One" in violation of 18 U.S.C. §§ 1028A(a)(1), 2. The date of this offense was April 5, 2005.

- Count Three: "knowingly and willfully us[ing] and attempt[ing] to use a passport issued under the authority of the United States . . . to gain entry into the United States at Newark Liberty International Airport" in violation of 18 U.S.C. § 1542 and Section 2.  The date of this offense was November 15, 2005.

- Count Four: "knowingly transfer[ring], possess[ing], and us[ing], without lawful authority, means of identification of another person . . . during and in relation to a

_____

[2] The Honorable Joseph A. Greenaway, Jr. found:

> [T]he Government has met its burden, and proved that the warrantless search of Nidal's apartment, and Defendant's suitcase and toiletries bag, was reasonable . . . . [Al-Salibi] gave Nidal access and control over the suitcase and toiletries bag . . . . Nidal's consent was voluntary. Therefore, the search was valid . . . it was reasonable for the FBI agents to believe that Nidal had access and control over the suitcase and toiletries bag for most purposes . . . Nidal's consent was voluntary. Therefore, the search was valid . . . [Al-Salibi's] Motion to Suppress Evidence is denied.

*United States v. Al-Salibi*, No. 07-687, 2008 WL 2699429, at *12 (D.N.J. June 27, 2008).

felony violation . . . namely using a U.S. passport obtained by reason of a false statement as alleged in Count Three" in violation of U.S.C. §§ 1028A(a)(1), 2. The date of this offense was November 15, 2005.

- Count Five: "knowingly and willfully us[ing] and attempt[ing] to use a passport . . . to gain entry into the United States at Newark Liberty Airport" in violation of 18 U.S.C. §§ 1542, 2. The date of this offense was April 15, 2006.

- Count Six: "knowingly transfer[ring], possess[ing], and us[ing], without lawful authority, means of identification of another person . . . during and in relation to a felony violation . . . namely using a U.S. passport obtained by reason of a false statement as alleged in Count Five" in violation of U.S.C. §§ 1028A(a)(1), 2. The date of this offense was April 15, 2006.

(*Id.* at 30-35.)

Petitioner did not wish to continue with Mr. Patton as his counsel, so on September 8, 2008, this Court appointed Henry E. Klingeman, Esq., and Anna Cominsky, Esq., to represent Petitioner. (App. at 42, Gov't Br. 3; *See* App. at 59-60, Tr. of Status Conf. at 3-4.)

On September 24, 2008, Petitioner filed a pro se motion to dismiss the indictment, contending that the Superseding Indictment contained multiplicities in violation of the Fifth Amendment's Double Jeopardy Clause. (App. at 37, Mot. to Dismiss Indictment.) On October 29, 2008, Petitioner filed a pro se "second motion to suppress evidence," concerning evidence that Judge Greenaway had previously ordered to be admissible. (*See* App. at 38, Second Mot. to Suppress Evidence.) For both procedural and substantive reasons, Judge Greenaway denied Petitioner's pro se motion to suppress evidence. (App. at 61, Tr. of Status Conf. at 5.) Shortly thereafter, on November 19, 2008, Mr. Klingeman filed a letter to withdraw Petitioner's

remaining pro se motions and another letter regarding Petitioner's wish to enter a conditional guilty plea. (App. at 65-66, Letters by Henry E. Klingeman, Esq.)

On October 30, 2008, the day after the Government filed a brief concerning the status of Petitioner's legal representation, Judge Greenaway held a status conference where Petitioner expressed his decision to be represented by Mr. Klingeman. (App. at 39-56, Gov't's Br. 1-17; App. at 61, Tr. of Status Conf. at 5.)   Further, Petitioner knew he had the right to represent himself. (App. at 59-60, Tr. of Status Conf. at 3-4.)

Petitioner's trial began on November 20, 2008,[3] and four days later, the jury returned a guilty verdict on all counts in the Superseding Indictment. (*See* App. at 418, Tr. of Sentencing at 100.)  As a result, on April 20, 2009, Petitioner was sentenced to 54 months in prison. (*See* App. at 445, Tr. of Sentencing at 25.)  On April 27, 2009, a Judgment of Conviction was filed. (App. at 448, J. of Conviction.)  The next day, Petitioner filed a pro se Notice of Appeal. (App. at 452, Pro Se Notice of Appeal.)  Two days later, Mr. Klingeman also filed a Notice of Appeal on Petitioner's behalf. (App. at 453, Notice of Appeal.)   On June 22, 2009, Judge Greenaway modified parts of the sentence that would run concurrently to others by filing an Amended Judgment of Conviction. (App. at 453, Am. J. of Conviction.)   On January 20, 2010, Mr. Klingeman filed a brief on Petitioner's behalf, however, only addressing the issues related to Judge Greenaway's denial of Petitioner's first suppression motion. (App. at 458-463, Appellant's Br. 1-3.)

Three months later, on April 20, 2010, the instant pro se Petition was filed under 28 U.S.C. § 2255, claiming that (1) the Superseding Indictment was defective for charging multiple counts of 18 U.S.C. § 1542, (2) Chapter 2 enhancement under the United States Sentencing Guidelines was unwarranted, (3) the Superseding Indictment inappropriately used 18 U.S.C. §

---

[3] The Honorable Joseph A. Greenaway, Jr. presided over Petitioner's trial. (App. at 69, Tr. of Trial at 1.)

1542 as an underlying offense for the Counts charging violations of 18 U.S.C. § 1028A, and that (4) Mr. Klingeman provided ineffective assistance of counsel. (App. at 489-494, Pet. under 28 U.S.C. § 2255 at 1-6.)  In connection with the Petition, a *Miller* order[4] was filed on May 26, 2010. (App. at 495, *Miller* Order.)

Thereafter, on June 29, 2010, the Third Circuit affirmed Judge Greenaway's denial of Petitioner's first motion to suppress evidence. (App. at 496-98, *United States v. Al-Salibi*, No. 09-2293, 385 Fed. Appx. 127, 128 (June 29, 2010)).

## LEGAL STANDARD FOR § 2255 PETITIONS

A district court, in considering a petition under 28 U.S.C. § 2255, must "accept the truth of the [petitioner's] factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (citation omitted) (internal quotation marks omitted).  If the § 2255 petition and the underlying case record show conclusively that the petitioner is not entitled to relief, the district court is not required to hold an evidentiary hearing. *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).  Furthermore, Rule 4(b) of the RULES GOVERNING § 2255 PROCEEDINGS (2011) provides: "If it plainly appears from the [petition], any attached exhibits, and the record of prior proceedings that the [petitioner] is not entitled to relief, the judge must dismiss the [petition] and direct the clerk to notify the [petitioner]."

Habeas corpus is not a substitute for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982).  Indeed, greater deference to state court decisions is required on habeas

---

[4] A *Miller* order is a notice and order, pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), advising pro se petitioners to have their pleading: ruled upon filed; recharacterized as a § 2255 motion, which will cause a petitioner to lose the ability to file a second pleading absent certification from the Court of Appeals; or withdrawn in order to file an all-inclusive  § 2255 Petition subject to the one year period included in the Antiterrorism Effective Death Penalty Act.  If the petitioner does not respond within 45 days, their motion is "ruled upon as filed." (App. at 495, Miller Order.)

petitions than on direct appeal because a writ of habeas corpus is "a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected." *See id.* at 164.  Thus, if the petitioner failed to raise a claim on direct review, "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'"[5] *Reed v. Farley*, 512 U.S. 339, 354 (1994) (quoting *Wainright v. Sykes*, 433 U.S. 72, 84 (1977)).

The petitioner is required to show "cause" by demonstrating he was unable to raise the claim in state court because an "objective factor external to the defense impeded counsel's efforts." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Cause must be "something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  For instance, "interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McClesky*, 499 U.S. at 494 (internal quotation marks omitted) (citation omitted). "[C]onstitutionally ineffective assistance of counsel . . . is cause," whereas "[a]ttorney error short of ineffective assistance of counsel  . . . does not constitute cause and will not excuse a procedural default." *Id.* (first alteration in original) (internal quotation marks omitted) (citation omitted).  A finding of prejudice requires a showing that the claimed error "'so infected the

---

[5] In addition, a habeas petitioner can avoid procedural default absent cause and prejudice if he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  However, such a showing is narrowly limited and not applicable to the instant action.  The Supreme Court found:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup v. Delo*, 513 U.S. 298, 321 (1995).

entire trial that the resulting conviction violates due process.'" *Frady*, 456 U.S. at 169 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

**DISCUSSION**

Petitioner claims that (1) the Superseding Indictment was defective for charging multiple counts of 18 U.S.C. § 1542, (2) Chapter 2 enhancement under the United States Sentencing Guidelines was unwarranted, (3) the Superseding Indictment inappropriately used 18 U.S.C. § 1542 as an underlying offense for the Counts charging violations of 18 U.S.C. § 1028A, and that (4) Mr. Klingeman provided ineffective assistance of counsel. (App. at 489-494, Pet. under 28 U.S.C. § 2255 at 1-6.)  Petitioner did not raise any of these claims on direct appeal in state court or in any state post-conviction proceeding, so these claims are procedurally barred unless he can establish "cause" for his failure to raise his present claims on direct review. *See Reed v. Farley*, 512 U.S. at 354.  As discussed above, ineffective assistance of counsel constitutes such "cause." *McCleskey*, 499 U.S. at 493.    Therefore, if Petitioner can establish ineffective assistance of counsel, he can avoid procedural default and this Court can reach the merits of his claim. However, as is discussed below, Petitioner cannot establish ineffective assistance of counsel and thus cannot establish cause so as to avoid procedural default.

**Standard for Ineffective Assistance of Counsel**

Section 2255 petitioners bear the burden of proving ineffective assistance of counsel. *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).  A defendant is denied the right to effective assistance of counsel if (1) his attorney's performance falls below "an objective standard of reasonableness," and (2) there is a "reasonable probability" that such ineffectiveness prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 688, 688, 695 (1984).

The first prong requires a petitioner to identify those acts or omissions by counsel that were "outside the wide range of professionally competent assistance." *Id.* at 690.  A court must be highly deferential when assessing counsel's performance, and "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  Further, a court must make "every effort . . . to eliminate the distorting effects of hindsight." *Id.* at 689.  The *Strickland* Court reasoned, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*  Therefore, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

The second prong requires a petitioner to show a reasonable probability that, but for counsel's unprofessional mistakes, the outcome of the proceeding would have been different. *Id.* at 694.  A reasonable probability of prejudice is one "sufficient to undermine confidence in the outcome." *Id.*  Furthermore, "[i]t is not enough for a defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . ." because "[v]irtually every act or omission of counsel would meet that test . . . ." *Id.* at 693.

### A. Claim 1: General Allegations Concerning Mr. Klingeman's Performance

Petitioner generally claims that Mr. Klingeman provided ineffective assistance of counsel. (App. at 494, Pet. at 6.)  Petitioner alleges that Mr. Klingeman was "careless and neglectful" and that he "fail [sic] to help me every time I raise [sic] an issue to him regarding my case." (*Id.*)

This allegation is too general to satisfy either prong of the *Strickland* test set out above. Further, the record supports that Mr. Klingeman sufficiently represented Petitioner in all phases of trial and post-trial matters. In fact, after considering Mr. Klingeman's arguments on behalf of Petitioner, Judge Greenaway sentenced Petitioner to fifty-four months of imprisonment instead of the seventy-four months requested by the Government. (*See* App. at 422-25, Tr. of Sentencing.)

Additionally, Mr. Klingeman's continuous efforts to advocate on behalf of Petitioner, who chose to proceed pro se while being represented by Mr. Klingeman, is evidence that Mr. Klingeman's behavior was neither careless nor neglectful. (*See, e.g.*, App at 37, Mot. to Dismiss Indictment.) Although Petitioner claimed that he wished to proceed to trial with Mr. Klingeman, (App at 59, Tr. of Status Conf. at 3), Petitioner continued to advocate on his own behalf. (App at 438-44, Tr. of Sentencing at 18-26.) All the while, Mr. Klingeman continued to represent Petitioner, who did not object to Mr. Klingeman's performance. Therefore, Petitioner's claim regarding ineffective assistance of counsel is against the weight of the evidence. For these reasons, Petitioner's general allegation concerning Mr. Klingeman's performance does not satisfy the *Strickland* test. Indeed, the evidence demonstrates that Mr. Klingeman adequately represented Petitioner's interests.

**B. Claim 2: Appeal of the Sentence Imposed**

Next, Petitioner claims that Mr. Klingeman should have appealed the fifty-four month imprisonment sentence. (App. at 494, Pet. under 28 U.S.C. § 2255 at 6.) This argument fails because there is no proof in the record that Petitioner asked Mr. Klingeman to appeal the sentence. Further, it would have been unreasonable for Mr. Klingeman to dispute the sentence, as Petitioner's sentence was originally supposed to be seventy-four months and had been reduced

to fifty-four months.  The evidence shows that Mr. Klingeman did not fall short of defending Petitioner in this regard, so this Claim fails to satisfy the *Strickland* test.

### C. Claim 3: Petitioner's Letter to Nidal Salibi

Petitioner claims he received ineffective assistance of counsel because Mr. Klingeman did not seek to suppress the letter found at the home of his brother, Nidal Salibi. (App. at 494, Pet. under 28 U.S.C. § 2255 at 6.)  This claim is without merit because the letter was addressed to Nidal, who decided, on his own, to turn it over to the FBI. (*See* App. at 10-15, *United States v. Al-Salibi*, No. 07-687, 2008 WL 2699429, at *1-5.)  In other words, the letter became Nidal's property, so Nidal was free to turn it over.  Furthermore, the contents of the letter were relevant to the instant case. *Gibson v. Mayor& Council of City of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2003).  Thus, it was reasonable for Mr. Klingeman to not seek suppression of the letter given that the letter belonged to Petitioner's brother, who willfully turned it over, and that the letter contained relevant evidence.  Petitioner also broadly claims the letter contained an "error," which Mr. Klingeman failed to correct. (App. at 494, Pet. under 28 U.S.C. § 2255 at 6.)  However, Petitioner's brother confirmed that this translation was accurate, which is a proper basis for introducing this letter into evidence. (*See* App. at 119-120, Tr. of Trial at 50-51.)  Thus, these claims fail to satisfy the *Strickland* test, as Mr. Klingeman's performance was reasonable.

### D. Claim 4: Cross-examination of FBI Special Agent Walsh

Petitioner argues that Mr. Klingeman failed to cross-examine Special Agent Suzanne Walsh about Petitioner's possession of false documentation. (App. at 494, Pet. under 28 U.S.C. § 2255 at 6.)  However, Mr. Klingeman did cross-examine Agent Walsh about the false documentation. (App. at 307,  Tr. of Trial at 239.)  Therefore, this claim has no merit, and thus fails the *Strickland* test.

### E. Claim 5: Proof "Azra Eliaho" was a Real Person

Petitioner also argues that the Government did not meet its burden to prove "Azra Eliaho," an alias used by Petitioner, was a real person. (App. at 494, Pet. under 28 U.S.C. § 2255 at 6.)   However, Petitioner's charges did not relate to his use of the name "Azra Eliaho," but rather related to his use of the name "Joseito Montalvo." (App. at 30-35, Superseding Indictment at 1-6.)   Thus, the Government did not have the burden to prove "Azra Eliaho" was a real person. It follows that Mr. Klingeman did not miss an opportunity to challenge the Government's burden regarding the alias "Azra Eliaho" because that name was not at issue.   Thus, this Claim has no merit under the *Strickland* test.

### F. Claim 6: Introduction of Phone Calls

Lastly, Petitioner alleges that Mr. Klingeman was ineffective because he failed to object to "the 'phone tap' at trial." (App. at 494, Pet. under 28 U.S.C. § 2255 at 6.)   During the phone calls between Petitioner and Nidal during Petitioner's incarceration, an automated inmate monitoring system announced that the call may be monitored. (*See* App. at 123-24, Tr. of Trial at 54-55.)   Since Petitioner had notice that the calls could be monitored and recorded, it would have been futile for Mr. Klingeman to challenge the admission of these calls based on the Fourth Amendment.   In addition, the calls that were admitted demonstrated that Petitioner "knowingly and willfully" possessed the fraudulent identifications, so they were relevant to the jury's evaluation.

For these reasons, this claim also fails the *Strickland* test.

**CONCLUSION**

For the reasons stated above, the Petition is **DISMISSED** with prejudice.


<u>s/Susan D. Wigenton, U.S.D.J.</u>


Orig: Clerk
Cc: